## Union League Club v. Blymyer Ice Machine Co.

1. CONTRACTS—*Agreement to Remove Machine Sold, if Not Satisfactory.*—An agreement by the seller that in case a machine should prove unsatisfactory for any other cause than those stated in the contract, plaintiff would remove the same from the defendant's premises, is by itself an undertaking to remove in case, for any reasonable cause, the machine is unsatisfactory.

Trespass on the Case, upon promises. Appeal from the Circuit Court of Cook County; the Hon. ALONZO K. VICKERS, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed. Opinion filed November 11, 1902.

December 28, 1894, the Blymyer Ice Machine Company agreed to erect for the Union League Club, in its house, a refrigerating machine according to certain specifications; and guaranteed to do certain work with an expenditure of not to exceed six horse-power, and with a requirement of not more than four gallons of water per minute, at a temperature of seventy degrees. This, appellee agreed to do for the sum of $1,800, " payable October 1, 1895, provided the machine " fulfilled " the guarantees given." Appellee further agreed, in case of the failure of the machine to fulfill the guarantees, to remove the same from the premises of the club. The contract contained also this undertaking upon the part of appellee :

" We also agree that in case the machine proves unsatisfactory for any other cause than those above stated, we shall remove it from said premises, replacing the boxes in the same condition in which they were when we entered the premises, and it shall be optional with the said Union League Club to accept and pay for the machine or not, as it may please, on the day above specified."

The machine was installed about July 1, 1895. December 16, 1895, the club decided to order the machine removed from its house, and December 17th, the superintendent of the club wrote to Mr. Meader, the trustee of appellant, asking him to remove the machine. December 19th, Mr. Meader replied expressing his surprise, asking to be informed wherein the machine had failed, and stated :

" I am not disposed to discuss the matter at length, inasmuch as your board has a perfect right to order it removed."

December 21st, Mr. Meader again wrote :

"I wish to know in what respect our machine failed.   You need fear no legal complications from answering me, for I can assure you now, I do not propose to make any fight against the decision of your board other than a fair argument, and I do propose to make that."

December 24th, Mr. Meader again wrote saying that the decision to remove was a severe one, as it placed in the hands of the competitors of his company a weapon that would do it harm, and further, " we wish to state at this time, that our machine shall be removed without question, but we feel that before beginning same we are at least entitled to a fair hearing from you;" and further, " we understand perfectly the position and your right to order the machine out; we shall not question that right, even if we can show the machine to be doing everything that was guaranteed for it," " but we do feel that you owe it to us to hear a full report concerning the machine and its condition from us."

December 30, 1895, February 27, 1896 and September 17, 1896, Mr. Meader wrote to the club as to removing the machine and his desire for a hearing, to the same effect. Mr. Meader did appear before the club at various times; he was allowed to and did place an expert in the building to run the machine for thirty days; he wrote several long letters as to the result ascertained by such report, the saving he claimed the machine was making in the expenses of the club, the work it was doing, etc.   The club had upon its part an examination and report made as to the working of the machine and the cost of running it.   There was also considerable correspondence concerning the placing by appellant in the club house, a caraffe box, to be cooled by the machine.   May 13, 1898, a fire occurred in the club house and May 25, 1898, appellee was again requested to remove the machine.   This appellee declined to do and brought suit October 14, 1898, recovering upon the trial the purchase

price of the machine, $1,800, with interest from the date of bringing suit.

PLINY B. SMITH, attorney for appellant.

MOSES, ROSENTHAL & KENNEDY, attorneys for appellee.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

October 1, 1895, was the day appointed by the parties, upon which appellant had an option to accept and pay for the machine or not, as it might please. The agreement by appellee that in case the machine should prove unsatisfactory for any other cause than those stated in the contract it would remove the same from the premises of the club, was by itself an undertaking to remove in case, for any reasonable cause, the machine was unsatisfactory. Keeler v. Clifford, 165 Ill. 544; Buckley v. Meidroth, 93 Ill. App. 460.

The frequent admissions of appellee that appellant had a right to remove the machine were, if not by it a construction of the contract, at least a carrying far beyond October 1, 1895, the option to remove at that date. The question is not whether the defendant did not have a right to reject and require the removal of the machine up to and during the entire year of 1896, but did such right continue until May, 1898. As to this, all that occurred up to the last mentioned date is to be considered.

Appellant did not, October 1, 1895, accept or pay for the machine. On the contrary, a short time thereafter it notified appellee that it declined to accept the same and wished to have it removed. Appellee, at that time, as well as upon a number of occasions thereafter, up to as late as September 17, 1896, in written communications to the club, acknowledged the right of the club to reject the machine, and its, appellee's, willingness to remove the same in case, upon further hearing and consideration, appellant was not willing to keep the property. The club did not insist upon the removal of the machine. To be sure, it at no time directly recalled its rejection and request for removal, but

it continued to use the machine, as before its rejection it had done, up to the month of May, 1898, a period of nearly three years. It took up and discussed with appellee the installation of a caraffe box in connection with the machine, which it was contemplated would add to its usefulness and the work it had to do.

It may be, and there is evidence tending to show, that appellant's directors in permitting the machine to remain and continuing to use it, were actuated by a spirit of kindness toward Mr. Meader, the trustee of appellee, and a desire not to do that which he urged upon them would be disastrous to his business and taken advantage of by his rivals. If such were the case, if the machine remained and was used by appellant without intention to accept the same, or if there was no time after notice to remove the same, an intention amounting to more than a willingness to let the machine remain and be used, with a possibility that at some time the club might think best to accept and pay for it, then appellant never became bound to pay for the machine and the judgment entered in this cause should be reversed.

The case was tried in the court below upon the theory that although appellant might at one or more times have rejected the machine and refused to pay for the same, yet it could at any time withdraw such rejection, and if it afterward kept and used the machine with the intention of accepting the same, such keeping and use amounted to a contract to pay, and that such intention to accept need not be evidenced by express words, but might be inferred from conduct; to such effect the jury were instructed.

Appellant did keep and did use the machine for more than two years after its first rejection of the same. The question presented to this court is not whether we think the jury should have found a verdict for the plaintiff. Upon the record, here presented, we can not say that there was no evidence warranting the jury in arriving at the conclusion it did. The evidence bearing upon the case was both oral and written. As to the oral testimony the jury had an opportunity of arriving at a correct conclusion not pos-

sessed by us. Appellant did not insist in the court below that the machine had failed to fulfill any of the guarantees contained in the contract of sale. Its position was and is that appellant had, October 1, 1895, an option to reject, or accept, and that it exercised its right of rejection; that this rejection was never recalled, but was repeatedly repeated, and that all that was done in the way of permitting the machine to remain and the use of it by appellant was at the request of appellee and in order that, as is urged, the club might not do that which would be of more damage to appellee than the loss of the purchase price of the machine. As to this, as well as to the position assumed by appellee, the jury were fairly instructed. Taken as a whole, the instructions were applicable to the case and fairly present the law. There was some evidence as to the necessities of the club requiring a larger machine and the opportunity presented by a fire for installing a new machine; that was not applicable to the contention between the parties, and should have had no influence with the jury. The evidence came in in such a manner, and was of such a character, that we do not think the jury were unduly influenced thereby.

The case presented by the evidence, is one about which reasonable men might differ. The judge who tried the cause in the court below might have set aside the verdict. He did not see fit so to do, but has given to it his approval. We do not find the record such that we ought to reverse this judgment. It is therefore affirmed.